### LYLE vs. JACKSON COUNTY.

A contract for the building of a house, which is so uncertain and indefinite in its terms and stipulations as to be incapable of performance, imposes no obligation upon the contractor to undertake it.

*Appeal from Independence Circuit Court.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

ANDERSON, for the appellant.

HEMPSTEAD, for the appellee.

Hon. THOMAS JOHNSON, special Judge, delivered the opinion of the court.

The State of Arkansas instituted her action of debt for the use and benefit of Jackson county, in the Circuit Court of said county, against Andrew Lyle and Micajah B. McCoy, and the cause was afterwards removed by a change of venue. The suit was based upon a bond executed by Lyle and McCoy to the state, with the penalty of thirty-seven hundred dollars, and conditioned that if Lyle would build a county jail in the town of Jacksonport, by the first day of January, 1856, in every particular similar to the specifications and plan annexed to the bond, unless the county commissioner and Lyle should see fit to alter or make any change, so that it should not exceed the amount of work so changed, and that if he would build said jail in a good, substantial and workmanlike manner, and deliver up the keys to the commissioner by the first day of January, 1856, he should receive the sum of eighteen hundred and fifty dollars, and the bond to be void, otherwise to remain in full force, etc.

This is believed to be the substance of the contract. The plan and specifications set out in the declaration, and which are admitted to be correct by the demurrer, are as follows, to-wit: Brick foundation, two feet thick, two feet high, two cross walls; timbers ten inches thick, or wide as they will face for floors; two pens ten inch square timber, nine feet high covered same as floor, wall brick nine inches to enclose jail rooms, nine feet high, twelve by fifteen feet square, air ventilators in foundation, one north, one south, one east and one west, door

of one cell two and a half inches oak plank, doubled and spiked with five and a half inch wrought nails clenched. Room covered, top, bottom and sides with oak plank two and a half inches, well spiked on; other room same, with addition of lining with sheet iron and covered with second tier with oak plank spiked through irons, etc., to wall, door of outside of other cell to be same as first, and an inside door of iron bars, three-fourths of an inch thick, crossed and riveted, spaces two and a half apart, hung with good wrought iron hinges, and to fasten to facing with two hasps and staples, and two pad locks, (good) outside doors to fasten with the most approved jail locks, indoors one by two feet and crossed with irons one and a half inches square, spaces two and a half inches apart, wall twelve inches thick of brick, to continue twenty-six feet to corner, and on to front and on to jail passage left next jail eight feet wide, with strong door in rear and partition; passage to be sealed up next jail with inch plank, other side lathed and plastered inside of jailor's house, partition and rooms lathed and plastered, with chimney and two fire places, and door in same, door in front, door in rear and door in partition, two windows in front fifteen panes ten and twelve glass, rear same, all to be covered with good cypress shingles.

The plaintiff alleges in his declaration that the specifications and plans are not shown, because the same are lost, and avers that there was no alteration made in the specifications and plan by the commissioner and said Lyle, and further that the county of Jackson hath at all times been ready to pay to Lyle the said sum of eighteen hundred and fifty-dollars, at such time as he should perform the condition of the bond, and further, that he had wholly failed to keep and perform the condition of his bond, but had broken the same, etc.

The leading objection to the declaration is, that it is entirely too uncertain to support a judgment.

The contract entered into by the parties is incorporated into the declaration, and forms a part of it, and if it is so utterly uncertain and unintelligible as not to be reducible to a certainty

it follows, as a matter of course, that it cannot become the subject of judicial cognizance..

The law requires that a declaration shall be certain to a certain intent in general, and means what upon a fair and reasonable construction may be called certain, without recurring to possible facts, which do not appear. See 1st *Chit. P*,. 238. In *Plowden's Commentaries, Fo.* 140, 290, it is said " That if any persons are agreed upon a thing, and words are expressed or written, to make the agreement, although they are not apt and usual words, yet if they have substance in them tending to the effect proposed, the law will take them to be of the same effect as usual words; for the law always regards the intention of the parties, and will apply the words to that which, in common presumption, may be given to be their intent. See *Comyn on Contracts, page* 23. The law then does not require any peculiar form and order of words in agreements, but regards only the intention of the parties in whatever words such intention may be expressed, provided they have substance in them and tend to the effect proposed.

We infer from the words employed in the contract under consideration, that the effect proposed was the building of a jail and jailor's house for the county of Jackson. The question to be decided then, is not whether apt and usual words have been adopted to make the agreement, but whether any words of substance appear, and such as tend to the effect proposed. There is certainly a great want of certainty, if not an utter repugnancy in the declaration. According to the condition of the bond Lyle was only required to build a jail, and in every particular similar to the specifications and plans thereto annexed.

The specifications as exhibited, show that not only a jail, but also a jailor's house was to be built, but we think it would be impossible to make a house of any known dimensions out of all the specifications which are supposed to refer to the jailor's house.

They are as follows: Wall twelve inches thick, of brick, to continue twenty-six feet to corner, and on to front, and on to

jail passage left, next jail eight feet wide, with strong door in rear, and partition; passage to be ceiled up next jail with inch plank, other side lathed and plastered middle of jailor's house, partition and rooms lathed and plastered with chimney and two fire places and door in same, door in front, door inside and door in partition, two windows in front, fifteen panes ten and twelve glass, rear same, all to be covered with good cypress shingles. The wall was to be twelve inches thick and to continue twenty-six feet to corner and on to front and on to jail passage left next jail eight feet wide, with strong door in rear and partition. It is to be continued twenty-six feet to corner, but where the starting point is, whether in the middle or at another corner, or from some other unknown point, it is impossible to determine. We are left equally in the dark in respect to the width and height of the wall. The passage is to be ceiled up next to the jail with inch plank, other side lathed and plastered. Here we learn there is to be a passage, but there is no intimation as to height, length or breadth of the rooms on either side of it. The middle of the jailor's house, partition and rooms, are to be lathed and plastered and there is to be a chimney and two fire places.

No data is given by which the middle of the jailor's house can be ascertained, nor is it stated where the chimney and fire places are to be located.

It is perfectly manifest that Lyle could never have constructed such a building from these specifications as the commissioner would have been bound to accept. The contract, so far as it relates to the jailor's house, being so uncertain and indefinite as to be incapable of performance, it follows that Lyle was under no obligation to undertake it, The specifications in reference to the jail are exceedingly vague and uncertain, yet we think that they are such as may be reduced to a certainty, and that without a violation of the ordinary rules of interpretation. The foundation is to be of brick, two feet thick, and two feet two inches high, and there were to be two cross walls.

True it is, that neither the extent of the cross walls, nor the materials of which they were to be composed, were expressly stated, but when taken in connection with what is said in relation to the outside wall, the intention is believed to be sufficiently manifest.   The cross walls spoken of were designed in part to support the floor, and doubtless were to be of the same material as the one that was designed to enclose the two pens of square timber.   True it is, that the extent of the wall is not specified, yet it is easily collected from the dimensions given to the jail rooms, which it was intended to surround.   We therefore think that although the specifications relating to the jail are not as definite and specific as could have been desired, yet they were sufficiently so to be intelligible to a man of ordinary capacity, and that consequently, if the contract had been confined to it, Lyle would have been left without any legal excuse for failing to perform it.   But when it is considered that the contract embraced a jailor's house as well as a jail, and that the whole taken together constitute an entirety, we are clearly of opinion that the demurrer was well taken and that it should have prevailed.   The judgment of the court below will therefore be reversed and the cause remanded with instructions to proceed in accordance with the opinion herein delivered.

Mr. Justice FAIRCHILD did not sit in this case.